IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

LUIS AVELLANA,                                §
                                              §
              *Plaintiff,*                     §                SA-24-CV-01317-FB
                                              §
vs.                                           §
                                              §
FRANK BISIGNANO, COMMISSIONER                 §
OF SOCIAL SECURITY,                           §
                                              §
              *Defendant.*                     §


**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Plaintiff's request for review of the administrative denial of his application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act. 42 U.S.C. §§ 405(g), 1383(c)(3). Plaintiff argues that the Administrative Law Judge ("ALJ") erred by failing to consider the total limiting effects of all his impairments, resulting in a decision that is not supported by substantial evidence. The undersigned held a hearing in this case, at which counsel for both parties appeared via videoconference. After considering Plaintiff's Original Brief [#11], Defendant's Brief in Support of the Commissioner's Decision [#15], the transcript ("Tr.") of the administrative proceedings [#5, #6, #7, #8], the arguments of counsel at the hearing, the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, the undersigned concludes that substantial evidence does not support the ALJ's RFC determination as to Plaintiff's mental limitations regarding his ability to interact with

others. The undersigned therefore recommends that the Commissioner's decision be vacated and this case remanded for further fact-finding consistent with this opinion.

## I.  Jurisdiction

This Court has jurisdiction to review a decision of the Social Security Administration pursuant to 42 U.S.C. § 405(g).  The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## II.  Governing Legal Standard

In reviewing the denial of benefits, the Court is limited to a determination of whether the Commissioner, through the ALJ's decision,[1] applied the proper legal standards and whether the Commissioner's decision is supported by substantial evidence.  *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).  "Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021–22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).  The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).  Conflicts in the evidence and credibility assessments are for the Commissioner, not the court, to resolve.  *Id.*  While substantial deference is afforded the Commissioner's factual findings, the Commissioner's legal conclusions, and claims of procedural error, are reviewed *de novo*.  *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

---

[1] In this case, because the Appeals Council declined to review the ALJ's decision, the decision of the ALJ constitutes the final decision of the Commissioner, and the ALJ's factual findings and legal conclusions are imputed to the Commissioner.  *See Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005); *Harris v. Apfel*, 209 F.3d 413, 414 (5th Cir. 2000).

In determining if a claimant is disabled, the Commissioner uses a sequential, five-step approach, which considers whether: (1) the claimant is currently engaged in substantial gainful activity, (2) he has a severe impairment, (3) the impairment meets the severity of an impairment enumerated in the relevant regulations, (4) it prevents the claimant from performing past relevant work, and (5) it prevents him from doing any relevant work. *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). If the claimant gets past the first four stages, then the burden shifts to the Commissioner on the fifth step to prove the claimant's employability. *Id.* A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987); *see also* 20 C.F.R. § 404.1520(a)(4).

If the Court does find an error in the ALJ's decision, it will only remand if the claimant has also met his burden of showing that the error was prejudicial. *Jones v. Astrue*, 691 F.3d 730, 734 (5th Cir. 2012) (citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)). The Court will affirm if the error was harmless. *Id.* at 734–35. Harmless error occurs "when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021) (citing *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (per curiam)).

### III.  Procedural Background

Plaintiff is a disabled veteran with a 100% disability rating from the Veterans Administration, a GED, and work experience as a servicer advisor for a car wash and manager for coffee and tobacco businesses. (Tr. 298–300, 360–61.) Plaintiff filed his application for DIB on June 21, 2022, alleging disability beginning March 12, 2022, based on the following physical and mental conditions: major depression with PTSD (from witnessing violence during

deployment), migraines, bilateral hearing loss with tinnitus, lymphedema, gastroparesis status post splenectomy and pancreatectomy, sleep apnea, diabetes, bilateral patella tendonitis, and multifocal pancreatic neuroendocrine neoplasm.  (Tr. 302, 359, 2809.)

SSA denied Plaintiff's DIB application on February 10, 2023, and then again upon reconsideration on April 12, 2023.  (Tr. 106–15.)  The State Agency Medical Consultant (SAMC) at the initial level, Dr. Patty Rowley, found Plaintiff could work at a medium exertional level but limited his standing and walking to four out of eight hours due to a diabetic foot ulcer. (Tr. 102.)  On reconsideration, SAMC Laurence Ligon found Plaintiff capable of performing the full range of medium work.  (Tr. 111.)  The State Agency Psychological Consultant (SAPC) at the initial level, Dr. David Clay, found Plaintiff not to have any severe mental impairments and to have mild limitations in all four areas of the psychiatric review technique, known as the Paragraph B criteria.[2]  (Tr. 101.)  On reconsideration, SAPC Linette Castillo found Plaintiff to have no limitations in understanding, remembering, or applying information or in adapting or managing oneself but to have moderate limitations in interacting with others and concentration, persistence, and pace.  (Tr. 109.)  Dr. Castillo specifically found that Plaintiff might need to work in an environment with minimal social interaction and would benefit from working with a nonconfrontational supervisor.  (Tr. 112.)

Following the denial of his claim, Plaintiff requested an administrative hearing.  Plaintiff, his attorney, and a vocational expert (VE) attended the administrative hearing before ALJ Gordan Momcilovic on August 24, 2023.  (Tr. 37–67.)  At the hearing, Plaintiff testified to having an open wound on his toe that would not heal from a surgery two years prior and that any walking reopens the wound.  (Tr. 49.)  Plaintiff explained that he wears compression stockings

---

[2] The PRT is the method used for evaluating mental impairments at all levels of the administrative review process.  20 C.F.R. § 404.1520a(c)(3).

23 hours a day to prevent weeping of fluids, can only sit 15 to 20 minutes at a time, and constantly needs to transition between sitting, standing, and lying down.  (Tr. 50.)  According to Plaintiff, his migraines, which occur several times a week, are one of the primary reasons he had to stop working, and his only relief is lying down in a dark room with blackout curtains.  (Tr. 51.)  Plaintiff claims his mental health has deteriorated since stopping working.  (Tr. 53.)  Also, Plaintiff reported that he almost died of COVID and still has lingering respiratory issues.  (Tr. 59–60.)

The ALJ issued an unfavorable decision on November 14, 2023.  (Tr. 119–29.)  The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2027, and has not engaged in substantial gainful activity since March 12, 2022, the alleged disability onset date.  (Tr. 121.)  At step two, the ALJ found that Plaintiff has the following severe impairments: (1) type two diabetes mellitus with history of ulcers; (2) morbid obesity (320 pounds); and (3) major depressive disorder, anxiety disorder/PTSD with antisocial and dependent personality traits, intermittent explosive disorder, and PTSD (which are severe only in combination).  (Tr. 121–23.)  At step three, the ALJ found that these impairments do not meet or medically equal the severity of one of the listed impairments in the applicable Social Security regulations.  (Tr. 123–24.)  As part of the step three analysis, the ALJ evaluated Plaintiff's mental limitations and adopted the reconsideration-level SAPC's findings as to the Paragraph B criteria—that Plaintiff has no limitations in understanding, remembering, or applying information and adapting or managing oneself but moderate limitations in interacting with others and concentrating, persisting, and maintaining pace.  (Tr. 124.)

Before reaching step four of the analysis, the ALJ found Plaintiff retains the RFC to perform medium work with only occasional interaction with the general public and the ability to

understand, remember, and carry out detailed but not complex job instructions and work-related tasks.  (Tr. 124–28.)  At step four, the ALJ determined that Plaintiff is unable to perform any of his past relevant work.  (Tr. 128.)  Then, considering Plaintiff's age, educational factors, work experience, and RFC, as well as the testimony of the VE, the ALJ found Plaintiff capable of performing other work in the national economy—the work of an industrial sweeper cleaner, floor waxer, and industrial cleaner.  (Tr. 128–29.)  Accordingly, the ALJ determined that Plaintiff is not disabled for purposes of the Act, and therefore not entitled to receive DIB.  (Tr. 129.)

Plaintiff requested review by the Appeals Council, and his case was remanded on January 16, 2024, on the basis that the ALJ's decision did not contain an adequate evaluation of the prior medical opinions, in that the ALJ found SAPC Castillo's mental RFC persuasive yet did not address Castillo's findings regarding Plaintiff's social limitations.  (Tr. 136–37.)  On remand, the Appeals Council directed the ALJ to (1) give further consideration to the RFC for the entire period at issue, noting that the ALJ may request additional evidence and/or medical source opinion if needed, and (2) if warranted, obtain supplemental VE testimony to clarify the effect of Plaintiff's limitations on the occupational base.  (*Id.*)

ALJ Momcilovic held a second hearing on July 16, 2024, at which Plaintiff, his attorney, and a new VE appeared.  (Tr. 68–97.)  At this hearing, the ALJ focused on Plaintiff's mental limitations due to the Appeals Council's directive.  At the hearing, Plaintiff testified to suffering from paranoia and fear, to never leaving the house alone, to experiencing nightmares and insomnia, and to having difficulty controlling his anger and emotional outbursts, and he explained that even going to the mailbox is challenging.  (Tr. 78–80, 82, 87.)  Regarding his physical limitations, Plaintiff testified that he can only sit or stand for 10 to 15 minutes at a time, experiences constant shortness of breath, suffers from neuropathy of the feet, and uses a cane he

received from the VA in 2022 due to his diabetic foot ulcer for 95 percent of his walking.  (Tr. 82, 84–85, 88.)  However, Plaintiff explained that he no longer has any open wounds but did have an open ulcer for two years.  (Tr. 85.)

The ALJ issued a second unfavorable decision on August 8, 2024.  (Tr. 17–30.)  He again found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2027, and has not engaged in substantial gainful activity since March 12, 2022, the alleged disability onset date.  (Tr. 19.)  At step two, he found Plaintiff to suffer from the following severe impairments: (1) morbid obesity (300 pounds); (2) diabetes with a history of ulcers and gastroparesis (3) major depressive disorder, anxiety disorder/PTSD, dependent personality traits, antisocial personality traits, intermittent explosive disorder (which are severe only in combination).  (Tr. 19–22.)  The ALJ concluded that Plaintiff's migraines were non-severe because they were improving with Botox injections; that his prior COVID-19 infection causing "long COVID" was non-severe as his lungs were clear; and that his hip arthritis, reflux, history of pancreas and spleen surgeries, sleep apnea, hypertension, hyperlipidemia, and thyroid issues were also non-severe.  (Tr. 20–21.)  At step three, the ALJ again found Plaintiff did not satisfy any of the listings and adopted the same analysis of the Paragraph B criteria as in his first opinion, which is consistent with the findings of SAPC Castillo on reconsideration—that Plaintiff has no limitations in understanding, remembering, or applying information and adapting or managing oneself but moderate limitations in interacting with others and concentrating, persisting, and maintaining pace.  (Tr. 22–23.)

Before step four, the ALJ found Plaintiff capable of the same RFC as he found in the first decision: medium work with only occasional interaction with the general public and the ability to understand, remember, and carry out detailed but not complex job instructions and work-related

tasks. (Tr. 24–28.) At step four, the ALJ again found Plaintiff incapable of performing his past relevant work. (Tr. 28.) But at step five, the ALJ determined Plaintiff can perform other work that exists in significant numbers in the national economy, namely that of a linen room attendant, landscape specialist, and kitchen helper, and therefore does not suffer from any disability. (Tr. 29–30.) Plaintiff appealed the decision, but the Appeals Council denied review on September 25, 2024. (Tr. 1–13.) Plaintiff thereafter filed this case seeking judicial review.

## IV.  Analysis

Plaintiff argues that the ALJ erred by failing to account for the total limiting effect of his impairments, resulting in a decision not supported by substantial evidence. Plaintiff's brief challenges the ALJ's findings as to both his physical and mental RFC. Having considered the record and  briefing, the undersigned finds that the ALJ's physical RFC is supported by substantial evidence, but the ALJ failed to build a logical bridge between the evidence and his conclusion as to Plaintiff's social limitations. Because substantial evidence does not support the ALJ's mental RFC as to social limitations, the Court must remand this case for further proceedings.

**A.   The ALJ's physical RFC determination is supported by substantial evidence.**

Plaintiff argues the ALJ's physical RFC is not supported by substantial evidence for several reasons. First, he argues that the ALJ erred in his consideration of SAMC Dr. Patty Rowley's opinion regarding Plaintiff's walking limitations. Second, he argues that the ALJ failed to evaluate Plaintiff's cane use under governing regulations. And third, Plaintiff contends the ALJ failed to consider his need to alternate between sitting and standing. None of these arguments is a basis for remand, and there was no reversible error in the ALJ's analysis of the

medical evidence regarding Plaintiff's physical limitations.  Additionally, substantial evidence supports the ALJ's overall physical RFC determination.

**Dr. Rowley.**  Dr. Rowley was the initial-level SAMC who reviewed Plaintiff's DIB application in January 2023 and found that Plaintiff can only stand or walk for four out of eight hours in a workday due to an open diabetic ulcer on his left foot.  (Tr. 102–03.)  The ALJ rejected this limitation, finding it unsupported by and inconsistent with additional evidence received subsequent to his review, which showed that "the claimant has <u>mental</u> impairments that are severe in combination."  (Tr. 28 (emphasis added).)  Plaintiff argues that no reasonable mind could accept the ALJ's findings on Plaintiff's walking limitations because the ALJ's stated reason for discounting Dr. Rowley's opinion was completely nonsensical, as Plaintiff's walking impairments have nothing to do with his mental impairments.  *See Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010) (ALJ must build "logical bridge" between the medical evidence and the ultimate RFC determination).

The undersigned agrees with Plaintiff that the ALJ failed to explain his reasons for rejecting the portion of Dr. Rowley's opinion about Plaintiff's standing abilities.  The entire text of the ALJ's treatment of the SAMC and the SAPC at the initial level is as follows:

> Upon initial consideration, [SAMC Rowley and SAPC Clay] found that the claimant did not have a severe mental impairment, and that he retained the ability to perform work at the medium exertional level with restrictions to sitting four hours in an eight-hour workday.  These findings are not persuasive.  They are not supported by their own evaluation of the medical evidence available to them or consistent with additional medical evidence received subsequent to their review, which shows that the claimant has mental impairments that are severe in combination.

(Tr. 28.)  The ALJ explained his reason for rejecting Dr. Clay's finding that Plaintiff has no severe mental impairments but did not articulate any reasons for rejecting Dr. Rowley's findings as to Plaintiff's standing limitations.  However, any error regarding the ALJ's treatment of Dr.

Rowley's opinion is not a basis for remand because it was harmless.  *See Jones*, 691 F.3d at 734–35.

There is ample evidence in the record to support the ALJ's decision not to adopt walking limitations in the RFC.  The SAMC on reconsideration, Dr. Ligon, found Plaintiff capable of the full range of medium work with no walking limitations, and the ALJ noted in his opinion that he found Dr. Ligon's opinion persuasive.  (Tr. 28, 111.)  Additional evidence received subsequent to the issuance of Dr. Rowley's opinion from Plaintiff's podiatry provider indicates that Plaintiff's toe wound had closed by May 2023 and was still closed at another appointment in June 2023.  (Tr. 26, 3894, 3910.)  The ALJ cited this evidence in his opinion, as well as Plaintiff's subjective report of walking 28,000 steps per day at a podiatry appointment on June 6, 2023, which amounts to over 13 miles daily.  (Tr. 26, 48, 3898.)  Plaintiff explained at the first ALJ hearing that his doctors subsequently limited him to 3,000 steps per day because the excessive walking made his wound vulnerable to reopening.  (Tr. 49.)  But Plaintiff testified at the second ALJ hearing in July 2024 that his wound had remained closed for approximately 18 months.  (Tr. 85.)  Finally, the ALJ noted that Plaintiff appeared in November 2023 for a neurological examination and presented with a normal gait and normal heel and toe walk.  (Tr. 27, 6485.)

**Cane Use.**  Relatedly, Plaintiff argues the ALJ's RFC of medium work without any standing or walking limitations is not supported by substantial evidence because the ALJ failed to evaluate whether Plaintiff's cane use was medically necessary.  Plaintiff's argument regarding cane use is based on SSR 96-9p, in which SSA addresses hand-held assistive devices.  *See* Policy Interpretation Ruling Titles II and XVI: Determining Capability to Do Other Work— Implications of a Residual Functional Capacity for Less than a Full Range of Sedentary Work,

SSR 96–9p, 1996 WL 374185, at *7 (S.S.A. July 2, 1996).  "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device . . . and describing the circumstances for which it is needed . . . ." *Id.* SSA further explains that where a claimant "must use such a device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment)," the occupational base "may be significantly eroded." *Id.*  In such circumstances, SSA directs its decisionmakers "to consult a vocational resource in order to make a judgment regarding the individual's ability to make an adjustment to other work." *Id.*

Plaintiff argues the ALJ failed to adequately apply SSR 96-9p because he did not cite the ruling, discuss the evidence in light of the ruling, or make a finding on the medical necessity of Plaintiff's cane use.   Although the ALJ failed to mention SSR 96-9p and its "medically necessary" standard in his opinion, his failure to do so was not reversible error in light of the substantial evidence in the record for the ALJ's overall physical RFC that Plaintiff does not have standing or walking limitations requiring the use of a cane.

An ALJ's failure to cite an applicable Social Security Ruling does not establish reversible error "in the absence of any showing that the decision is materially inconsistent with the regulation." *Montez v. Kijakazi*, No. EP-23-CV-00155-ATB, 2023 WL 8879266, at *5 n.12 (W.D. Tex. Dec. 22, 2023) (internal quotation and citation omitted).  SSR 96-9p does not stand for the proposition that any evidence in the record regarding cane use requires the ALJ to solicit VE testimony on whether the use of an assistive device erodes the occupational base.  Per the SSA ruling, such testimony is only required where the evidence establishes that a hand-held assistive device is "medically required."

This is not a case in which the ALJ ignored the medical evidence regarding Plaintiff's cane use. To the contrary, the ALJ expressly acknowledged that Plaintiff testified at the second hearing in July 2024 that he received a cane from the VA in 2022 due to his diabetic foot ulcer and continues to use it as an assistive device 95 percent of the time for ambulation, despite having no more open wounds on his left foot. (Tr. 25, 82–88.) The ALJ also noted that this testimony is contradicted by other evidence in the record, namely Plaintiff's testimony at the first ALJ hearing in August 2023 (a year prior) that he had an open wound on his toe for two years but was not currently using an assistive device for walking. (Tr. 24, 54–55.) Plaintiff expressly stated at that hearing that he did not use a cane in his own home because he was familiar with the area, but that outside of his house he almost always held his wife's hand and used her as "cane-ish" support. (Tr. 55.) There are also numerous notations in the records from various medical appointments that Plaintiff walked without any assistive device (Tr. 499, 506, 1046, 2129, 2132, 2446, 3065, 3291), and, as already noted, Plaintiff reported walking over 13 miles a day in June 2023, just two months before the second ALJ hearing in which he claimed the need for a cane (Tr. 3898).

The ALJ's opinion, read as a whole, analyzed the conflicting evidence, determined Plaintiff's testimony regarding cane use was not credible, and did not include any walking or standing limitations in the RFC. Although the ALJ did not cite SSR 96-9p and did not use the term "medically necessary," the ALJ discussed the cane prescription, the reason for which it was given, and noted the resolution of that issue. The ALJ explained that the prescription was provided "when [Plaintiff] was experiencing a diabetic foot ulcer" and that Plaintiff "testified that he ha[d] not had any additional ulcers in about two years." (Tr. 26.) Plaintiff did not provide the ALJ with evidence that his cane use was medically required. Therefore, the failure

to explicitly address SSR 96-9p was not reversible error.  Moreover, the evidence of Plaintiff's improved condition, his self-report of significant walking activity, and the many notations in the record in which Plaintiff appeared to appointments without an assistive device provide substantial evidence for  the ALJ's determination not to include cane use in the RFC.

**Need for sit/stand option.**  Plaintiff argues the ALJ committed reversible error by failing to analyze his need to alternate between sitting and standing to accommodate his foot ulcers. This argument is also without merit.  The only evidence Plaintiff cites in his brief regarding sitting and standing options is his own hearing testimony that he always needs to transition between standing, sitting, and lying down to manage his lymphedema and associated leg swelling.  (Tr. 49–50, 84.)  Plaintiff does not refer to any objective medical evidence requiring Plaintiff to be permitted to alternate between sitting and standing at work.

The regulations provide that when making a disability determination, the adjudicator must consider subjective symptoms, including pain, and the extent to which those symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence.  20 C.F.R. § 404.1529(a).  The ALJ is required to follow a two-step "objective-subjective" process in evaluating the claimant's subjective evidence and the applicant's credibility if a credibility determination is necessary.  *See Salgado v. Astrue*, 271 F. App'x 456, 458 (5th Cir. 2008) (per curiam).  At step one, the ALJ determines whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms. *See* Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p, 2017 WL 5180304, at *3 (S.S.A. Oct. 25, 2017).  At step two, the ALJ evaluates the intensity and persistence of an individual's symptoms such as pain and determines the extent to which the symptoms limit the claimant's ability to perform work-related activities.  *Id.* at *4.  In

considering the intensity, persistence, and limiting effects of an individual's symptoms, the ALJ examines the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record. *Id.* The governing regulations include several specific factors to be considered when evaluating alleged symptoms, such as pain: (1) daily activities; (2) location, duration, frequency and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms (e.g., lying flat on the back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3).

Here, the ALJ accurately outlined the two-step process, determined that Plaintiff has medically determinable impairments that caused some of the alleged symptoms, but found that Plaintiff's statements concerning the intensity and limiting effects of his symptoms were not consistent with the medical evidence and other evidence in the record. (Tr. 24–25.) In doing so, the ALJ provided specific reasons for not crediting the extent of Plaintiff's description of his subjective symptoms and noted Plaintiff's claim that he experiences pain from standing and requires frequent lying down to manage discomfort in the lower extremities. (Tr. 24.) In finding Plaintiff's subjective description of his symptoms not entirely persuasive, the ALJ emphasized that there were few objective findings in the medical evidence supporting decreased physical functioning; that his diabetic wound had healed; that he was active and walking; that his diabetes

was being treated conservatively with medication and was under control; that he could perform most activities of daily living independently; and that he ambulated with a normal gait, had intact sensation and strength in his lower extremities, and was achieving some weight loss. (Tr. 25–27.)

In short, the ALJ provided specific reasons for discrediting the severity with which Plaintiff described his physical limitations. Plaintiff argues the ALJ failed to accurately evaluate his subjective symptoms but makes only general arguments, focused more on overarching legal standards than on the details of the administrative record and medical evidence. In sum, Plaintiff has failed to establish that the ALJ's subjective symptom analysis as to Plaintiff's physical symptoms was flawed or unsupported by substantial evidence.

**B.    The ALJ's mental RFC determination is not supported by substantial evidence.**

Plaintiff challenges the sufficiency of the evidence underlying the ALJ's mental RFC determination, arguing that the ALJ erred in evaluating the opinions of consultative examiner Dr. Sloan and SAPC Dr. Castillo and in evaluating his subjective mental-health symptoms. Because substantial evidence does not support the ALJ's findings as to Plaintiff's social limitations, the undersigned will recommend this case be remanded for further administrative proceedings.

On February 9, 2023, Plaintiff had a consultative examination with Dr. Lawrence Sloan, a licensed clinical psychologist, at which Plaintiff explained his PTSD symptoms, described his limited social interactions with others, and reported that he struggles with frustration tolerance, panic attacks, and violent outbursts, and had even hit someone in the face over a card game within the prior week. (Tr. 2909–10.) Upon examination, Dr. Sloan found Plaintiff to exhibit only marginal attention and concentration, to require frequent redirection, and to present poor judgment and inappropriate behavioral responses to hypotheticals. (Tr. 2812.) Dr. Sloan found

Plaintiff unable to maintain effective social interaction on a consistent and independent basis with supervisors, coworkers, and the public and to be only capable of marginally dealing with normal pressures in a competitive work setting. (Tr. 2813.) Dr. Sloan gave Plaintiff a prognosis of "guarded." (*Id.*) The ALJ found Dr. Sloan's opinion only partially persuasive, rejected Dr. Sloan's social limitations, and assessed Plaintiff with the capacity to have unlimited interactions with supervisors and coworkers but only occasional interactions with the general public. (Tr. 26.) Plaintiff first argues the ALJ erred in his analysis of Dr. Sloan's opinion under the governing regulations, specifically 20 C.F.R. § 404.1520c(a).

Under this regulation, the Commissioner is to consider all medical opinions and prior administrative medical findings using the same specific factors outlined in the rule, the most important of which are supportability and consistency. *Id.* § 404.1520c(b)(2). "Supportability" is defined as "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853. "Consistency" refers to "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." *Id.* The Commissioner must articulate how persuasive he finds each of the opinions in the record and explain his conclusions with regard to the supportability and consistency factors. 20 C.F.R. § 404.1520c(b)(2). Plaintiff contends that the ALJ failed to consider the supportability factor and that his consistency analysis is not supported by substantial evidence.

In finding Dr. Sloan's opinion only partially persuasive, the ALJ stated that the opinion was "*consistent with* the record documenting irritability and is *supported by* findings [sic] deficits in concentration" but found "little to no evidence of being marginally able to deal with normal pressures in a competitive work setting" and "no objective *support* at all of inability to

16

maintain effective social interaction consistently and independently." (Tr. 26 (emphasis added).) The ALJ did explicitly consider both the consistency and supportability factors as required by 20 C.F.R. § 404.1520c(a), but the ALJ's findings on supportability and consistency with respect to social limitations are not supported by substantial evidence.

The ALJ dismissed Dr. Sloan's social limitations based on there not being objective support for Plaintiff's inability to maintain effective social interaction with others, yet it is unclear what independent and objective evidence of Plaintiff's social challenges would be contained in the record. A medical provider does not observe an individual in public or engaged in social interaction; they assess them in isolation and in a controlled environment. And, in dismissing Dr. Sloan's social limitations, the ALJ did not acknowledge the significant evidence in the record that *is* consistent with and supports these limitations. The medical records are replete with Plaintiff's detailed reports of issues with violence towards others, low frustration tolerance exacerbated by chronic pain, poor self-control, and limited insight and judgment. Plaintiff reported in 2021 that he struggled with violence and tried to fight someone who he believed stole something from him. (Tr. 1269.) That same year he endorsed a history of aggressive and violent behavior—choking someone until he lost consciousness and fighting his brother as if he were in combat. (Tr. 1293.) In 2022, he said he was effectively managing his anger by using social isolation as means to avoid violent outbursts and fighting. (Tr. 1777.) In 2023, at his examination with Dr. Sloan, he referenced choking someone, pulling a gun on someone, a history of multiple fights per year, of being unable to back away when someone confronts him, and hitting someone in the face over a card game, while explaining that medication had been ineffective at treating his PTSD. (Tr. 2809–10.)

Additionally, the SAPC on reconsideration, Dr. Castillo, assessed Plaintiff as having moderate limitations in the following areas involving social interaction, based in part on Dr. Sloan's examination: interacting with the general public, accepting instructions and responding appropriately to criticism from supervisors, the ability to work in coordination with or in proximity to others without being distracted by them, and the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 112.) Dr. Castillo expressly stated in her assessment that Plaintiff "may need to work in an environment with minimal social interaction" and "would benefit from working with a nonconfrontational supervisor." (*Id.*)

The ALJ also found Dr. Castillo's opinion, which is consistent with Dr. Sloan's findings, to be only partially persuasive, noting that there was a "significant amount of medical evidence received at the hearing level, which supports that [Plaintiff's] mental impairment has improved." (Tr. 28.) Plaintiff argues this conclusion is objectively incorrect and not supported by substantial evidence, and the undersigned agrees. The only evidence cited by the ALJ anywhere in his opinion regarding improvement in Plaintiff's mental status is an isolated notation at a neurology behavioral medicine intake in January 2024 describing Plaintiff's mood as euthymic and cooperative. (Tr. 27, 6420.) But this same record reflects treatment goals to address Plaintiff's ongoing anger and hostility issues and thus cannot reasonably be construed as evidence of the resolution of Plaintiff's social issues. (Tr. 6420.)

The ALJ also noted that Plaintiff failed to follow through with recommendations from his mental health counselor that he obtain a medication evaluation to address his depression, anxiety, and sleep disturbances, and inferred from this evidence that Plaintiff's mental condition had improved. (Tr. 27.) Yet in April and May 2023, several months after his exam with Dr. Sloan,

Plaintiff reported to his therapist, Leslie Switzler, that there had been no improvement since his last visit, that he was unable to leave the house, and that he was struggling to interact with anyone but his wife. (Tr. 3019, 3975.) Switzler diagnosed Plaintiff with PTSD and set treatment goals of helping him leave the house and decreasing his fear and anger. (Tr. 3980.) Two months later, Switzler noticed an increase in Plaintiff's anxiety and depression despite intervention. (Tr. 5565.) According to therapy notes, Plaintiff was having extreme difficulty leaving the house, was no longer able to attend to his hygiene, and was struggling with suicidal ideation and somatic symptoms of nausea and vomiting. (*Id.*) A failure to follow up with treatment recommendations is not evidence of an improved condition; it could support the opposite inference—that Plaintiff mental condition was deteriorating to such an extent that he was no longer managing his mental-health care well.

Although the relative weight given to the evidence contained in the record is within the ALJ's discretion, the ALJ's discretion is not boundless; he must still build a "logical bridge" between the medical evidence and the ultimate RFC determination. *Price*, 401 F. App'x at 986. If the ALJ's stated reasons for reaching his conclusion could not be accepted by "a reasonable mind," there is not substantial evidence to support the ALJ's denial of benefits. *Newton*, 209 F.3d at 452.

Neither of the reasons the ALJ provided for discounting Dr. Castillo's opinion provides a logical bridge between the ALJ's conclusion that Plaintiff can interact with coworkers and supervisors without limitation and his reports of violent outbursts towards others, which were found credible by examining and non-examining consulting psychologists. This is particularly true given that the ALJ himself found Plaintiff to have moderate limitations in interacting with others when evaluating the Paragraph B criteria at step three, just as Dr. Castillo did. (Tr. 23.)

The ALJ also acknowledged and credited medical records documenting Plaintiff exhibiting agitation and frustration at appointments.  (Tr. 23, 584.)

In summary, the ALJ failed to build a logical bridge between his stated reasons for rejecting the social limitations imposed by Dr. Sloan and Dr. Castillo and the medical evidence. The ALJ failed to identify sufficient evidence from which a reasonable mind might accept as adequate to support his conclusion that Plaintiff has the ability to interact appropriately without limitation with all supervisors and coworkers and occasionally with the general public.  *See Villa*, 895 F.2d at 1021–22.  Accordingly, this case must be remanded for further administrative proceedings.

### V.  Conclusion and Recommendation

Based on the foregoing, the undersigned finds that substantial evidence does not support the ALJ's mental RFC regarding Plaintiff's ability to interact with others. The undersigned therefore **recommends** that the Commissioner's decision finding Plaintiff not disabled be **VACATED** and this case **REMANDED** for further findings and proceedings in accordance with this opinion.

### VI.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the Clerk of Court and serve the objections on all other parties.  A party filing

objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

    SIGNED this 7th day of November, 2025.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE